SAVE OUR SYCAMORE,
Plaintiff-Appellant,

v.

METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, DeKALB COUNTY, GEORGIA, and William T. Coleman, Secretary of Transportation, U. S. Department of Transportation, Defendants-Appellees.

INMAN PARK RESTORATION, INC., et al., Plaintiffs-Appellants,

v.

The URBAN TRANSPORTATION ADMINISTRATION et al., Defendants-Appellees.

Nos. 76–1978, 76–2712.

United States Court of Appeals, Fifth Circuit.

July 12, 1978.

---

[*] Chief Judge of the United States District Court for the District of Maryland, sitting by designation.

Richard N. Hubert, Robert L. Schwind, Atlanta, Ga., for plaintiff-appellant in No. 76–1978.

Anne S. Emanuel, W. Stell Huie, Betty W. Driver, Atlanta, Ga., for Metropolitan Atlanta Rapid.

Wendell Willard, Decatur, Ga., for De-Kalb Co. and Metropolitan Atlanta Rapid Transit, etc.

Robert W. Batchelder, Urban Mass Trans. Adm., Washington, D. C., for Reynoldstown Civic Improve.

John R. Myer, Atlanta, Ga., for plaintiffs-appellants in No. 76–2712.

John W. Stokes, U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for Secretary of Transportation and federal defendants.

Charles E. Biblowit, Atty., Land & Nat. Resources Div., App. Sec., George R. Hyde, Atty., Peter R. Taft, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for federal defendants.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

PER CURIAM:

These cases concern compliance of the Metropolitan Area Rapid Transit Authority (MARTA) with federal statutes in approving, financing and constructing a rapid transit system for the metropolitan Atlanta region.

Plaintiffs sought declaratory and injunctive relief from defendants' alleged failure to comply with requirements of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4331 et seq. (1970), of section 4(f) of the Department of Transportation Act (DOTA), 49 U.S.C. § 1653(f) (1970), of section 14(c) of the Urban Mass Transportation Assistance Act of 1970 (UMTA), 49 U.S.C. § 1610(c) (1970), and of section 106 of the National Historic Preservation Act of 1966 (NHPA), 16 U.S.C. § 470f (1976). On the basis of the district court opinion,[1] we affirm the denial of plaintiffs' DOTA, UMTA and NHPA claims. We also affirm the denial of plaintiffs' NEPA claims but have concluded that

---

1. *Inman Park Restoration, Inc. v. Urban Mass Transp. Admin.*, 414 F.Supp. 99 (N.D.Ga.1976).

resolution of the NEPA issue required supplementary discussion.

■ Simply stated, the NEPA issue is whether the environmental impact statement (EIS) was sufficiently detailed to satisfy the requirements of the Act.[2] Plaintiffs argue that the EIS discussion of the location and construction of two rapid transit stations and of a 2500-foot radius of track was not sufficiently detailed. The district court disagreed reasoning on the facts before it that NEPA requires that the scope of the EIS encompass the entire rapid transit system. Concluding that the systemwide EIS was satisfactory, the court noted that the preparation of an EIS encompassing less than the entire system or encompassing individual rapid transit stations would not have satisfied the requirements of NEPA.

The record reflects that at the time the final EIS was prepared the proposed rapid transit system included 50 miles of rail lines. Thirty-seven rapid transit stations are to be located along these lines. Federal authorities had authorized the expenditure of $800 million toward completion of the system.

We agree with the district court that in this case NEPA requires an EIS of systemwide scope. The considerations that support this conclusion, explained fully in the district court opinion, are the purpose of the rapid transit system, *Sierra Club v. Callaway,* 499 F.2d 982 (CA5, 1974), the fact that isolated transit stations or sections of rail have no independent function, *id.,* and the fact that the interrelatedness of project subsections renders impracticable the required consideration of alternatives on oth-

er than a systemwide level. *Named Individual Members of the San Antonio Conservation Soc'y v. Texas Highway Dept.,* 446 F.2d 1013 (CA5, 1971), cert. denied, 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972).

The determination that the scope of an EIS is proper is important to the required determination whether the agency in good faith objectivity has taken a hard look at the environmental consequences of a proposed action and at alternatives to that action. *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Environmental Defense Fund, Inc. v. Corps of Engineers,* 492 F.2d 1123 (CA5, 1974); *Natural Resources Defense Council, Inc. v. Morton,* 148 U.S.App.D.C. 5, 458 F.2d 827 (1972). Also relevant to the required determination are subsidiary determinations whether the EIS provides detail sufficient to enable those who did not have a part in its compilation to understand and consider meaningfully the pertinent environmental influences involved, *Environmental Defense Fund, Inc. v. Corps of Engineers,* 492 F.2d 1123, 1136 (CA5, 1974), and whether the EIS explication of alternatives, judged against a rule of reason, *Sierra Club v. Lynn,* 502 F.2d 43, 62 (CA5, 1974), cert. denied, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975), is sufficient to permit a reasoned choice among different courses of action.

These formulations, individually or in gross, do not establish a bright-line test of the adequacy of an EIS. Rather they express an aggregate of factors implicit in the decision whether a "hard look" has been taken "in good faith objectivity." In the instant case the district court properly em-

---

2. "The Congress authorizes and directs that, to the fullest extent possible . . . all agencies of the Federal Government shall—

  .    .    .    .    .

  (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

  (i) the environmental impact of the proposed action,

  (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

  (iii) alternatives to the proposed action,

  (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

  (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

42 U.S.C. § 4332 (1970).

phasized and correctly analyzed the propriety of the systemwide scope of the EIS. This emphasis, in the district court's opinion, on systemwide scope, was responsive to plaintiffs' entreaties, iterated on appeal, that the case should turn on EIS treatment of two of 37 rapid transit stations and of 2500 feet of at least 50 miles of rail line. In a regional flood control project the placement of an individual dam or canal is of undeniable importance and must be considered in an EIS. Yet the placement of the dam or canal is of an importance subsumed by that of the project, and the impact of the subunit must be considered accordingly. In a project to establish a woodland, the undeniable importance of individual trees is subsidiary to that of the forest. We have concluded that the atomistic evaluation urged by the plaintiffs admits of no principled limitation and that the district court properly rejected it by evaluating the adequacy of the EIS not only as it pertained to the stations and footage of track in question but also as it pertained to the systemwide MARTA project.

The district court's determination that the systemwide scope of the EIS filed was proper is, of course, only one of many factors bearing on the question whether the EIS was sufficiently detailed as to a specific subunit and its alternatives. As we interpret the district court opinion, it does not suggest that an EIS of proper scope is necessarily an EIS of sufficient detail. Nor does the opinion suggest that the scope of an EIS necessarily determines the scope of the alternatives that must be considered. Other factors relevant to the adequacy of an EIS as to a project subunit and its alternatives might include a comparison of the cost of the subunit with the cost of the project, a consideration of whether plans for the subunit involve environmental consequences significantly different in quality or quantity from the consequences of the entire proposal, a consideration whether environmental information relevant to the subunit parallels that relevant to the project, and a determination whether the subunit, if viewed in isolation from the project, would constitute a major federal action for which NEPA would require an EIS.

The detail required in an EIS is that necessary to establish that an agency in good faith objectivity has taken a sufficient look at the environmental consequences of a proposed action and at alternatives to that action. In this case the district court concluded that the agency had taken in good faith objectivity the required look at the environmental consequences of the rapid transit system and of its component subunits. The record supports this conclusion. The systemic and component alternatives required to be considered were alternatives sufficient to permit a reasoned choice among different courses of action. In this case the district court properly concluded that the agency had considered alternatives that facilitated a reasoned choice.

The judgment is AFFIRMED.